Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
**FARUQI & FARUQI LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: brohr@faruqilaw.com
        bheikali@faruqilaw.com

**[Additional counsel on signature page]**

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JOYCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IXIA, ERROL GINSBERG, BETHANY MAYER, LAURENT ASSCHER, JONATHAN FRAM, GAIL HAMILTON, and ILAN DASKAL,<br><br>Defendants. | **CLASS ACTION**<br><br>Civil Action No.: 2:17-cv-02071<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934, AND RULE 14A-9**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Brian Joyce ("Plaintiff"), by and through his undersigned counsel, brings this shareholder class action on behalf of himself and all other similarly situated public shareholders of Ixia ("Ixia" or the "Company") against Ixia and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S,C. §§78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Ixia and Keysight Technologies, Inc. ("Keysight").   Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.     On January 30, 2017, Ixia and Keysight jointly announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") under which Keysight, through its wholly-owned subsidiary, Keysight Acquisition, Inc., will acquire Ixia in an all cash transaction.   Under the terms of the Merger Agreement, Ixia's public shareholders will receive $19.65 in cash for each share of Ixia common stock they own (the "Merger Consideration").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") to be filed with the SEC on March 14, 2017.   The Board recommends that Ixia shareholders vote in favor of approving the Proposed Merger at the shareholder special meeting scheduled for April 12, 2017, and agree to exchange their shares pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and an opinion rendered by the Company's financial advisor, Deutsche Bank Securities Inc. ("Deutsche").

3.     The Merger Consideration and the process by which Defendants agreed to consummate the Proposed Merger are fundamentally unfair to Ixia's public shareholders.   The Company has reported increasing financial measures for

CLASS ACTION COMPLAINT

the past several quarters and, as a result, its stock price increased approximately 85% during the six months preceding the announcement of the Proposed Merger.

4.    To ensure the success of the Proposed Merger, the Board issued the Proxy Statement, which fails to provide shareholders with all material information necessary for them to assess the fairness of the Merger Consideration.   In particular, the Proxy Statement does not include a fair summary of the financial analyses performed by Deutsche and fails to disclose certain material projections for Ixia, including a reconciliation of the non-GAAP (generally accepted accounting principles) projections to the most directly comparable GAAP measures and the line items used to calculate the non-GAAP measures.

5.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from proceeding with the shareholder vote on the Proposed Merger, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations Sections 14(a) and 20(a) of the Exchange Act.

## **PARTIES**

6.    Plaintiff is, and has been at all relevant times, a shareholder of Ixia common stock.

7.    Defendant Ixia is a California corporation headquartered in Calabasas, California.  The Company test, assess, and optimize networks and data centers to accelerate and secure application delivery through network testing, security enhancements, and network monitoring.

8.    Individual Defendant Bethany Mayer is, and has been at all relevant times, Ixia's President, Chief Executive Officer, and a director of the Company.

9.    Individual Defendant Errol Ginsberg is, and has been at all relevant times, Ixia's Chief Innovation Officer and the Chairman of the Board.

CLASS ACTION COMPLAINT

10.    Individual Defendant Laurent Asscher is, and has been at all relevant times, a director of the Company.

11.    Individual Defendant Jonathan Fram is, and has been at all relevant times, a director of the Company.

12.    Individual Defendant Gail Hamilton is, and has been at all relevant times, a director of the Company.

13.    Individual Defendant Ilan Daskal is, and has been at all relevant times, a director of the Company.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

15.    Personal jurisdiction exists over each Defendant either because the Defendant is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

16.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) Ixia has its principal place of business in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Recent Financial Performance

17.    Ixia was founded in 1997 and is headquartered in Calabasas, California.  The Company provides application performance and security resilience

CLASS ACTION COMPLAINT

solutions to enterprises, service providers, network equipment manufacturers, and governments throughout the world.

18.   On November 1, 2016, The Company announced strong financial results for the third quarter of 2016, including the following: Total revenue for the 2016 third quarter was $123.9 million, compared with $120.1 million reported for the 2016 second quarter; on a GAAP basis, the company recorded net income for the 2016 third quarter of $4.8 million, or $0.06 per diluted share, compared with net income of $4.0 million, or $0.05 per diluted share, for the 2015 third quarter, and net income of $1.5 million, or $0.02 per diluted share, for the 2016 second quarter.

19.   Commenting on the Company's strong financial results, Individual Defendant Mayer stated: "*We are pleased with our results in the third quarter, with revenue and EPS exceeding our guidance*.  Our revenue performance was driven by growing momentum for our network visibility solutions and record revenue from the enterprise market, which offset softness in our NEM markets…We are continuing to execute and invest in our strategy and are pleased with the early results we have generated from the changes we made to our sales leadership and organization."

20.   As a result of the Company's recent strong financial performance, its stock price increased significantly during the six months preceding the announcement of the Proposed Merger, as reflected in the chart below:

CLASS ACTION COMPLAINT



21.    In sum, it appears that the Merger Consideration offered to Ixia's public shareholders in the Proposed Merger is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the amount offered for those securities in the Proposed Merger given the Company's recent financial performance and prospects for future growth and earnings.  If consummated, the Proposed Merger will deny Class members their right to fully share equitably in the true value of the Company.

22.    It is therefore imperative that Ixia's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy Statement, so that they can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

CLASS ACTION COMPLAINT

## The Materially Incomplete and Misleading Proxy Statement

23.     On March 14, 2017, Defendants caused the material incomplete and misleading Proxy Statement to be filed with the SEC.  The information contained in the Proxy Statement has thus been disseminated to Ixia shareholders to solicit their vote in favor of the Proposed Merger.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

24.     First, the "Certain Ixia Unaudited Prospective Financial Information" section of the Proxy Statement (47-48) is incomplete and misleading because it omits material information concerning the Company's financial projections. Specifically, the Proxy Statement provides projections for Non-GAAP financial metrics including Adjusted EBITDA and Adjusted EPS, but fails to provide the line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile these non-GAAP projections to GAAP.

25.     When a company discloses non-GAAP financial measures in a Proxy Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

26.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.   The SEC

Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as the Company has included in the Proxy Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

27.   In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

CLASS ACTION COMPLAINT

heightened its scrutiny of the use of such projections.[2]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

28.    In order to make the projections included on page 48 of the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.  Indeed, the Company routinely provides such a reconciliation table in its quarterly financial results releases, and it can therefore undoubtedly provide such a reconciliation table for the projections included in the Proxy Statement without unreasonable efforts.[4]

29.    At the very least, Defendants must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures Adjusted EBITDA and Adjusted EPS, referenced in the footnotes on page 48 of the Proxy Statement.  Such projections are necessary to make the non-GAAP

---

[2]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited 03/06/2017).
[3]    *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. (last visited 03/06/2017)
[4]    *See Ixia Announces Financial Results For 2016 Third Quarter*, (Nov. 1, 2016), http://investor.ixiacom.com/Company/Investors/PressRelease/News-Details/2016/Ixia-Announces-Financial-Results-for-2016-Third-Quarter/default.aspx.

CLASS ACTION COMPLAINT

Adjusted EBITDA and Adjusted EPS projections included in the Proxy Statemet not misleading.  If corporate directors and officers choose to disclose financial projections in a proxy statement, they must provide complete and accurate projections, not merely excerpts of certain sets or line items of projections, particularly non-GAAP projections.

30.   The Proxy Statement also fails to provide sufficient information for shareholders to assess the valuation analyses performed by Deutsche in support of its fairness opinion.

31.   With respect to Deutsche's *Selected Companies Analysis* and *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples for each transaction and company utilized.  As a result of these omissions, shareholders are unable to assess whether Deutsche applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied share price ranges.  The omission of such information renders the summaries of these valuation analyses and the implied share price ranges on pages 43-45 of the Proxy Statement misleading.

32.   With respect to Deutsche's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the range of perpetuity growth rates of 2.5% to 3.5% and the metric to which the growth rates were applied; (ii) the calculated range of terminal values; and (iii) the inputs and assumptions underlying the calculated discount rate range of 10.0% to 12.0%.  The omission of this material financial information renders the summary of Deutsche's *Discounted Cash Flow Analysis* on page 45 of the Proxy Statement and the implied present value range set forth therein incomplete and misleading.

33.   Indeed, as a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation

analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> **There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars**….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  **This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices.</u>** The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions. *Id.* at 1577-78.

34.    The Proxy Statement also omits material information regarding potential conflicts of interest faced by the Company's officers and directors. Specifically, while the Proxy Statement states that "it is expected that certain of [the Company's] executive officers may, prior to or upon completion of the merger, enter into new employment arrangements with Keysight, with the surviving corporation, or with one of their respective affiliates[,]" the Proxy Statement fails to disclose the timing and nature of all communications regarding

11

future employment and/or directorship of Ixia's officers and directors, including who participated in all such communications. Such information is material to Ixia shareholders, as it is necessary for them to assess whether the Company's officers faced a significant conflict of interest while negotiating the terms of the Merger Agreement and the Merger Consideration. The omission of this information renders the "Background of the Merger" and "Interests of Our Directors and Executive Officers in the Merger" sections of the Proxy Statement incomplete and misleading.

35.     Lastly, while the Proxy Statement on page 42 states that ""Ixia has agreed to pay Deutsche Bank a percentage of any payment to which it is entitled under the merger agreement in connection with the termination thereof," the Proxy Statement fails to disclose the percentage of such payment potentially payable to Deutsche. Deutsche stands to make money even if the Proposed Merger is not consummated, and it may have been willing to provide a fairness opinion regardless of the underlying fairness of the Proposed Merger because it is likely to get paid regardless of whether or not the deal is consummated. Information regarding all of Deutsche's potential fees is therefore material to Ixia shareholders.

36.     Indeed, information that bears on whether an investment bank faces conflicts of interest is material to shareholders when deciding how to vote on a merger and whether to seek appraisal. It is imperative for the shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis. For that reason, the benefits of the merger to the investment banker, beyond its expected fee, must also be disclosed to the shareholders. There is no rule that conflicts of interest must be disclosed only where there is evidence that

the financial advisor's opinion was actually affected by the conflict.  It is not only the amount and nature of a contingent fee that is relevant to an investment bank's interest in a transaction.

37.    The omission of such information renders the vague reference to the fee Deutsche is entitled to in connection with the termination of the Merger Agreement on page 42 of the Proxy Statement incomplete and misleading.

38.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLASS ALLEGATIONS

39.    Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 individually and on behalf of all other holders of Ixia common stock (except Defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with them and their successors in interest) who are or will be threatened with injury arising from Defendants' wrongful actions as more fully described herein (the "Class").

40.    This action is properly maintainable as a class action.

41.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are thousands of members in the Class.  As of March 13, 2017, there were approximately 83.2 million shares of Ixia common stock issued and outstanding.  The holders of these

CLASS ACTION COMPLAINT

shares of stock are believed to be geographically dispersed throughout the United States.  All members of the Class may be identified from records maintained by Ixia or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

42.    Questions of law and fact are common to the Class and predominate over questions affecting any individual class member.  The common questions include, *inter alia*, the following:  (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy Statement in violation of Section 14(a), SEC Rule 14a-9, and Regulation G; (ii) whether the Individual Defendants may be liable under Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if the Proposed Merger is consummated as presently anticipated.

43.    Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and the other members of the Class have and will sustain legal and equitable damages as a result of Defendants' wrongful conduct as alleged herein.

44.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

45.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude maintenance as a class action.

CLASS ACTION COMPLAINT

**COUNT I**
**Claim for Violations of Section 14(a) of the**
**Exchange Act Against All Defendants**

46.   Plaintiff repeats and realleges each allegation set forth herein.

47.   Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

48.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

49.   SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.   The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*."  17 C.F.R. § 244.100(b).   The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other

clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.   17 C.F.R. § 244.100(a).   As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

50.   The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

51.   Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analyses performed by Deutsche; and (iii) conflicts of interest faced by Company management and Deutsche.

52.   In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

53.   The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.   The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Deutsche reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Deutsche as well as its fairness opinion and the assumptions made and matters considered in connection therewith.   Further, the Individual Defendants

were privy to and had knowledge of the projections for the Company and knew or should have known of the conflicts faced by Deutsche and the timing of management's discussions regarding post-close employment.

54.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

55.     Ixia is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

56.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

57.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**Claims for Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

58.     Plaintiff repeats and realleges each allegation set forth herein.

59.     The Individual Defendants acted as controlling persons of Ixia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Ixia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and/or materially incomplete and therefore misleading.

60.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  Thus, the Individual Defendants were intimately connected with and directly involved in the making of this document.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and

considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.   By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.   Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above, which has been omitted from the Proxy Statement;

C.   Rescinding, to the extent already implemented, the Proposed Merger or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   In the event Defendants consummate the Proposed Merger, awarding damages to Plaintiff and the Class;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated:  March 15, 2017

**FARUQI & FARUQI, LLP**

/s/ *Barbara A. Rohr*
Barbara A. Rohr, SBN 273353
Benjamin Heikali, SBN 307466
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile:  (424) 256-2885
Email:  brohr@faruqilaw.com
         bheikali@faruqilaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: jwilson@faruqilaw.com

**MONTEVERDE & ASSOCIATES PC**
David E. Bower
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Email: dbower@monteverdelaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Brian Joyce ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Ixia and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and Monteverde & Associates PC and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Ixia securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 15th day of March 2017.

_____
Brian Joyce

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 12/02/16 | 200 |
|  |  |  |
|  |  |  |
|  |  |  |